MARCOS BENITEZ GONZALEZ, ISAAC )
GONZALEZ HERNANDEZ, VICTORINO FELIX )
ANTONIO, JUAN JAVIER VARELA CUELLAR, )
RUBEN DOMINGUEZ ANTONIO, RIGOBERTO )
CARTERAS JARDON, JORGE BAUTISTA )
SABINO, EMMANUEL CRUZ RIVERA, CELSO )
GONZALEZ TREJO, ERIC JACINTO WENCES )    COLLECTIVE ACTION
VASQUEZ, MARTIN NELSON WENCES )      29 U.S.C. § 216(b)
VASQUEZ, PORFIRIO BAUTISTA CRUZ, )
ALEJANDRO DE LA CRUZ MEDINA, JOSÉ )
ESTEBAN HERNANDEZ CRUZ, SIXTO )
HERNANDEZ BUENO, and VIRGINIO ANGELES )
GONZALEZ, TIBURCIO ANTONIO MANUEL, )
and HUMBERTO ANTONIO HERNANDEZ, on )
behalf of themselves and all other similarly situated )
persons, )
                    )    CLASS ACTION
        Plaintiffs, )
                    )
v. )
                    )    Complaint
O. J. SMITH FARMS, INC., BOSEMAN FARMS, )
INC., GREENLEAF NURSERY CO., SBHLP, INC.,)
JOEL M. BOSEMAN, JEAN J. BOSEMAN, )    Civil Action No.:
PEYTON G. McDANIEL, SANDRA W. )
McDANIEL, and SALVADOR BARAJAS, )
                    )
        Defendants. )
———————————————————— )

## I.    <u>PRELIMINARY STATEMENT</u>

      1.    In either the 2019 agricultural season or in both the 2018 and 2019 agricultural

seasons in North Carolina, Plaintiffs Marcos Benitez Gonzalez, Isaac Gonzalez Hernandez,

Victorino Felix Antonio, Juan Javier Varela Cuellar, Ruben Dominguez Antonio, Rigoberto

Carteras Jardon, Jorge Bautista Sabino, Emmanuel Cruz Rivera, Celso Gonzalez Trejo, Eric Jacinto

Wences Vasquez, Martin Nelson Wences Vasquez, Porfirio Bautista Cruz, Alejandro De la Cruz

Medina, José Esteban Hernandez Cruz, Sixto Hernandez Bueno, Virginio Angeles Gonzalez, Tiburcio Antonio Manuel, and/or Humberto Antonio Hernandez were jointly employed by defendant Salvador Barajas doing business as SBHLP, Inc. (hereinafter referred to collectively as "SBHLP") with a series of other fixed site agricultural employers under the North Carolina Wage and Hour Act (NCWHA) and/or the Fair Labor Standards Act to which SBHLP furnished them through the H-2A program to perform various agricultural duties.

2.      Those other "on contract" fixed site agricultural joint employers included the tobacco and sweet potato growing and harvesting operation of defendant O. J. Smith Farms, Inc. and two of its principals, defendants Peyton G. McDaniel and his spouse, Sandra W. McDaniel, in and around Nash County in or near Whitakers, North Carolina (hereinafter "Smith Farms defendants") for work starting in late June or early July 2018 and 2019, and ending in mid to late November of each of those same years, and the multiple forms of outside nursery work provided by defendant Greenleaf Nursery Co. starting in early March and ending at the end of November of both 2018 and 2019 that were listed on the temporary labor certification application by SBHLP pursuant to 20 C.F.R. § 655.132(b)(1).

3.      With the exception of the work of plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez for the 2018 season and Tiburcio Antonio Manuel in both 2018 and 2019, those other fixed site agricultural employers also included the "off contract" work in the pickle cucumber and sweet potato growing operation in Nash County, North Carolina of defendants Boseman Farms, Inc. and Joel and Jean Boseman, the two principals of Boseman Farms, Inc. (hereinafter "Boseman Farms"), for off contract work with Boseman Farms from in or about late April of both 2018 and 2019 through in or about mid-June of both 2018 and 2019 that were not listed on the temporary labor certification application by SBHLP in violation of 20 C.F.R. § 655.132(b)(1).

2

4.     Beginning in early March of 2018 and 2019, and ending on or about November 30 in each of those same three years, the SBHLP Defendants furnished approximately 50 H-2A workers to one or more of these same "on contract" and "off contract" fixed site agricultural employers in North Carolina. As part of that process, the SBHLP Defendants and those same defendant fixed site agricultural employers to which the SBHLP Defendants furnished one or more of the named Plaintiffs and the other workers directly from Mexico violated the rights of those named Plaintiffs and those other workers under the Fair Labor Standards Act, the AWPA, and/or and N.C.Gen.Stat. § 95-25.6 by failing to pay each Plaintiff free and clear at least the required minimum hourly wage for every compensable hour of labor performed by the named Plaintiffs and those workers in the first and last workweeks and in each workweek that SBHLP and those same defendant fixed site agricultural employers jointly employed one or more of the named Plaintiffs and those workers from Mexico in North Carolina in 2018 and/or 2019. This violation occurred as a result of the *de facto* wage deduction made by the SBHLP defendants and one of the other fixed site agricultural employer defendants in the form of payments by the Plaintiffs and the H-2A workers and other workers that they seek to represent as a condition of their employment in North Carolina with an H-2A visa in North Carolina in 2017, 2018, and 2019 for the costs of their inbound and return transportation and subsistence to and from the employment sites in eastern North Carolina with those fixed site agricultural employers from and to the place from which the plaintiffs and the Mexican workers they seek to represent departed to work for and to which they returned to after finishing their work for those same defendants in one or more of each of those same three agricultural seasons.

5.     In addition, in the case of defendants SBHLP and Smith Farms, by failing to pay all wages when due at the minimum hourly adverse effect wage rate ("AEWR") promulgated by the

3

U.S. Department of Labor ("DOL") pursuant to 20 C.F.R. §§ 655.122(l) and 655.120 (2010) and as set forth in 29 U.S.C. § 206(a) for the hand harvest of sweet potatoes on a piece rate basis for the defendants in 2018 and 2019, and by failing to pay at that same rate for all hours worked in the production and harvest of tobacco in both 2018 and 2019.

6.      In 2018 and again in 2019, when SBHLP and Boseman Farms jointly employed three or more of the named plaintiffs "off contract" as migrant agricultural workers for the time periods that are detailed in other paragraphs of this Complaint, they failed to comply with the provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") with respect to the provision of individual wage statements, maintenance of payroll records for that employment, and other provisions of the AWPA.  All plaintiffs who were employed in that "off contract" work seek statutory damages under the AWPA pursuant to 29 U.S.C. §1854(c)(1) both on an individual and class basis pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

7.      In 2018 and 2019, the SBHLP and Boseman Farms Defendants also jointly violated the AWPA when they used and caused to be used drivers that did not have an appropriate license to operate the buses and vans that the SBHLP and Boseman Defendants used to transport the plaintiffs (excluding named plaintiff Victorino Felix Antonio) and the migrant agricultural workers they seek to represent to and from the cucumber and sweet fields or beds in which they were employed when on or more of those same buses or vans was not properly and fully insured to the extent required by the AWPA.

8.      The named Plaintiffs also seek unpaid wages and liquidated damages under 29 U.S.C. §§ 206(a) and 216(b) and N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1), and statutory damages under 29 U.S.C. § 1854(c)(1) on a collective and/or class basis pursuant to 29 U.S.C. § 216(b) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## II.  **JURISDICTION**

8.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (interstate commerce), and 1367(a) (supplemental jurisdiction).  This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.  **VENUE**

9.      Venue over this action lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 29 U.S.C. § 216(b).  At all times relevant to this action, defendants O. J. Smith Farms, Inc. ("SFI") and Boseman Farms, Inc. (BFI) were and are corporations organized under the laws of the State of North Carolina with their principal places of business in Nash County, North Carolina.  Defendants SFI and BFI acted at the direction and under the control of defendants Peyton G. McDaniel and his spouse, Sandra W. McDaniel (for SFI) and of defendants Joel Boseman and his spouse, Jean Boseman (BFI) who are all residents of Nash County, North Carolina.  At all times relevant to this action, defendant Greenleaf Nursery Co. ("Greenleaf") was and is a corporation organized under the laws of the State of Oklahoma and registered to do business in North Carolina and doing business in and around Edgecombe County, North Carolina.

10.     At all times relevant to this action, defendants SBHLP, Inc. ("SFI") was and is a corporation organized under the laws of the State of Florida that acted at the direction and under the control of defendant Salvador Barajas and his farm labor contractor employees Pablo LNU and Jeremias LNU (hereinafter referred to collectively as "SBHLP").

11.     At all times alleged in this Complaint in 2018 and 2019, defendant SBHLP was and is a farm labor contractor who furnished, transported, and jointly employed one or more of the named plaintiffs and the migrant agricultural workers and temporary agricultural workers

5

with H-2A visas to perform hand labor in agriculture at various times in 2018 and 2019 that the named plaintiffs seek to represent to, for, and with Smith Farms, Boseman Farms, and Greenleaf in their regular and substantial business activities in and around Nash County and surrounding counties in North Carolina at and before the time this action was commenced in a manner which gives rise to the claims alleged in this Complaint.

12. At all times relevant to this action, defendant Salvador Barajas doing business as SBHLP, Inc. (hereinafter collectively referred to as "SBHLP") was and is a farm labor contractor who furnished the named plaintiffs and other migrant agricultural workers and temporary agricultural workers with H-2A visas to perform hand labor in agriculture at various times in 2018 and 2019 for defendants Smith Farms, Greenleaf Nursery Co., and Boseman Farms, and was engaged and continues to engage in regular and substantial business activities in Nash County, Halifax County, Edgecombe County, and surrounding counties in North Carolina at the time this action was commenced.

## IV. PLAINTIFFS

13. At all times relevant to this Complaint in 2019, Plaintiffs Marcos Benitez Gonzalez, Isaac Gonzalez Hernandez, Victorino Felix Antonio, Jorge Bautista Sabino, Emmanuel Cruz Rivera, José Esteban Hernandez Cruz, Celso Gonzalez Trejo, Ruben Dominguez Antonio, Porfirio Bautista Cruz, Sixto Hernandez Bueno, and Virginio Angeles Gonzalez were and are citizens of Mexico who permanently reside in colonias located in or near Tamazunchale in the state of San Luis Potosí in the Republic of Mexico who were jointly employed with a group of SBHLP, Inc. H-2A workers in 2019 in North Carolina from late April 2019 through the first week or so of June 2019 by the SBHLP Defendants and the Boseman Farms Defendants, and then from the first week or so of June 2019 through the end of November

2019 by the SBHLP Defendants and the Smith Farms Defendants (with the exception of plaintiff Bautista Cruz who was forced by a work-related injury that occurred in late September 2019 to return to Mexico on the last day of September 2019, and plaintiff Virginio Angeles Gonzalez who was forced by a family emergency to turn to Mexico at the end of October 2019) within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1).

14. At all times relevant to this Complaint in 2018, Plaintiffs Marcos Benitez Gonzalez and Isaac Gonzalez Hernandez were also jointly employed to perform various types of agricultural field labor with a group of SBHLP, Inc. H-2A workers from in or about mid- or late April 2018 until the end of November 2018 in North Carolina by the SBHLP Defendants and a succession of all of the other Defendants except Greenleaf within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1). In addition, from in or about May 8, 2018 through late August or early September 2018, named plaintiff Humberto Antonio Hernandez was also jointly employed to perform various forms of agricultural field work by the SBHLP Defendants and a succession of all of the other Defendants except Greenleaf. For plaintiff Humberto Antonio Hernandez, that field work and joint employment started in or about 8 May 2018 and continued thereafter until in or about late August or early September 2018 with the SBHLP Defendants and the Smith Farms Defendants. In that joint employment, plaintiff Humberto Antonio Hernandez worked doing weeding, digging ditches, topping and suckering of tobacco, setting tobacco plants, and harvesting cucumbers. Starting in or about late August or early September 2018 and continuing through the end of the season until

7

about November 22, 2018 plaintiff Humberto Antonio Hernandez was jointly employed by the

SBHLP Defendants and defendant Greenleaf to perform nursery work within the meaning of

N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A

visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and

1188(a)(1).

15.     From about September 10 to November 20, 2018, Plaintiff Victorino Felix

Antonio was jointly employed within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and

29 U.S.C. §§ 203(d) and 203(g) with an H-2A visa by the SBHLP Defendants and defendant

Greenleaf in nursery work at the nursery operated by Greenleaf near Tarboro, North Carolina.

He seeks to represent about 60 other H-2A workers who, like him, traveled directly from Mexico

to North Carolina with the assistance of the SBHLP Defendants to be jointly employed by those

same defendants and to perform their first workweek of agricultural employment as an H-2A in

2018 in that same nursery work at various times ranging from early March of 2018 through on or

about November 20, 2018.  In 2019 starting in early March 2019 and ending in November 2019,

the SBHLP Defendants again jointly employed with defendant Greenleaf  in the same way at

least 60 other H-2A workers whom the plaintiff Felix Antonio also seeks to represent along with

all H-2A workers who were jointly employed by the SBHLP Defendants and Greenleaf in either

2018 or 2019 to the extent that those 2019 H-2A workers traveled directly from Mexico and

worked, as did Plaintiff Felix Antonio in 2018, and performed their first workweek of that joint

employment in one or both of those years (as plaintiff Felix Antonio did in only 2018) doing

nursery work for defendant Greenleaf and the SBHLP Defendants in some workweek in the time

period from in or about March 5, 2018 through in or about November 20, 2018.

15A.    Plaintiff Tiburcio Antonio Manuel was and is a citizen of Mexico who permanently resides in a colonia located in or near Tamazunchale in the state of San Luis Potosí in the Republic of Mexico who was jointly employed with a group of SBHLP, Inc. H-2A workers in North Carolina from in or about the last week of April or early May 2018 and 2019 through the end of November 2018 and 2019 by the SBHLP Defendants and the Smith Farms Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1).

16.    At all times relevant to this Complaint in 2019, Plaintiffs Rigoberto Carteras Jardon, Alejandro De la Cruz Medina, Martin Nelson Wences Vasquez, Eric Jacinto Wences Vasquez, and Juan Javier Varela Cuellar were and are citizens of Mexico who permanently reside in colonias located in the state of Estado de Mexico in the Republic of Mexico who with a group of SBHLP, Inc. H-2A workers were also jointly employed in 2019 in North Carolina from late April 2019 through the first week or so of June 2019 by the SBHLP Defendants and the Boseman Farms Defendants, and then from the first week or so of June 2019 through the end of November 2019 by the SBHLP Defendants and the Smith Farms Defendants (again with the exception of plaintiff Bautista Cruz who was forced by a work-related injury that occurred in late September 2019 to return to Mexico on the last day of September 2019, and plaintiff Virginio Angeles Gonzalez who was forced by a family emergency to turn to Mexico at the end of October 2019 within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1).

17.     In and during 2018 and 2019, all defendants shared in the control of the manner and means by which the named plaintiffs and the SBHLP, Inc. H-2A workers they seek to represent accomplished their work for the respective "fixed site agricultural employer" (FSAE) defendants who jointly employed them, provided the tools and equipment needed to perform the work for the respective FSAE defendants who jointly employed them, and determined when and how long the H-2A workers worked for the respective FSAE defendants who jointly employed them.  In both 2018 and 2019, the work performed by the named plaintiffs and their fellow worker SBHLP, Inc. H-2A workers was part of the regular business of the respective FSAE Defendants who jointly employed them, and was performed at the farming or nursery operations owned by the respective FSAE Defendants who jointly employed them with the SBHLP Defendants to cut, plant or harvest sweet potatoes by hand or to perform all forms of manual nursery work on land owned or controlled by the FSAE Defendants to whom or which they were furnished by the SBHLP Defendants.

18.     As alleged in ¶15 above of this Complaint in 2018 and/or 2019, Defendant Greenleaf and the SBHLP Defendants jointly employed named plaintiff Victorino Felix Antonio and an additional approximately 60 H-2A workers other than the named plaintiffs that the SBHLP Defendants furnished to Defendant Greenleaf in one or both of those years to perform nothing but manual nursery work in one or both of those same years pursuant to H-2A visas obtained by the SBHLP Defendants based on four (4) labor certification applications the SBHLP Defendants made under 20 C.F.R. § 655.132 that specifically listed Greenleaf as the only nursery employer to which the SBHLP Defendants were to furnish H-2A workers in both of those years. Pursuant to those four labor certification applications copies of which are attached to this complaint marked as Plaintiffs' Exhibit A, Plaintiffs' Exhibit B, Plaintiffs' Exhibit C, and Plaintiffs' Exhibit D, in the 2018 and 2019 agricultural seasons in North Carolina, all of H-2A

workers for whom the SBHLP Defendants obtained H-2A visas to perform any nursery work including named plaintiff Victorino Felix Antonio were furnished by the SBHLP Defendants only to Greenleaf, and jointly employed by them with Defendant Greenleaf to perform manual nursery work on the hundreds of acres of land owned by Greenleaf near Tarboro, North Carolina within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g).

19.     As alleged in ¶¶13-14, 15A, and 16 above of this Complaint in the years 2018 and/or 2019, from late April or early May to the end of November in both of those years, the Smith Farms Defendants and the SBHLP Defendants jointly employed differing groups of those named plaintiffs in one or both of those same years as alleged in ¶¶13-14, 15A, and 16 above with the Smith Farms Defendants the named plaintiffs (excluding named plaintiff Victorino Felix Antonio in 2018) along with an additional approximately 40-50 H-2A workers that the SBHLP Defendants furnished in each of those years to the Smith Farms Defendants to cut sweet potato plants, weed fields, and to harvest sweet potatoes and/or tobacco in one or both of those same years pursuant to H-2A visas obtained by the SBHLP Defendants based on four (4) labor certification applications the SBHLP Defendants made under 20 C.F.R. § 655.132 that specifically listed SFI as a fixed site agricultural employer to which the SBHLP Defendants were to furnish H-2A workers in both of those years.  As alleged in ¶¶13-14, 15A, and 16 above and pursuant to those four labor certification applications copies of which are attached to this complaint marked as Plaintiffs' Exhibit A, Plaintiffs' Exhibit B, Plaintiffs' Exhibit C, and Plaintiffs' Exhibit D, those named plaintiffs (excluding named plaintiff Victorino Felix Antonio in 2018) and differing groups of approximately half of the H-2A workers who did not perform nursery work for whom the SBHLP Defendants obtained H-2A visas to cut sweet potato plants, weed fields, and to harvest sweet potatoes and/or tobacco were regularly furnished by the

SBHLP Defendants to the Smith Farms Defendants, and jointly employed by those same Defendants to cut sweet potato plants, weed fields, and to harvest sweet potatoes and/or tobacco on land owned or controlled by the Smith Defendants in or near Nash or Halifax Counties in North Carolina within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g).

20. As alleged in ¶¶13-14, 15A, and 16 above of this Compliant in the years 2018 or 2019, from the end of May to the first week in July in 2018 and from the end of May to the first week of July in 2019 in the time period before they began any regular work for the Smith Farms Defendants, the Boseman Farms Defendants and the SBHLP Defendants jointly employed the named plaintiffs (excluding plaintiff Victorino Felix Antonio in 2018 and excluding plaintiff Tiburcio Antonio Manuel and the workers described in ¶15A above in 2018 and 2019) and an additional approximately 40-50 migrant agricultural workers that the SBHLP Defendants furnished in each of those years to the Boseman Farms Defendants to cut sweet potato plants and/or harvest pickle cucumbers on land owned or controlled by the Boseman Defendants in or near Nash County, North Carolina within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g). At all of those same time periods in 2018 and/or 2019 all of the named plaintiffs (excluding Victorino Felix Antonio in 2018 and excluding plaintiff Tiburcio Antonio Manuel and the workers described in ¶15A above in 2018 and 2019) and the other migrant agricultural workers that they seek to represent were furnished to perform and did perform this work at the time that they possessed H-2A visas obtained by the SBHLP Defendants based on the same four (4) labor certification applications described above that the SBHLP Defendants made under 20 C.F.R. § 655.132 that specifically did not list BFI as an authorized fixed site agricultural employer to which the SBHLP Defendants were authorized and certified to

furnish H-2A workers in both of those years. Because that work was "off contract" agricultural work performed without the authorization and certification required by 20 C.F.R. § 655.132(b)(1), it was illegal agricultural work performed by those named Plaintiffs and the workers that they seek to represent as migrant agricultural workers and the workers they seek to represent as defined by 29 U.S.C. § 1802(8)(A) and 29 C.F.R. §§ 500.20(n) and 500.20(p)(2).

## V.     FIXED-SITE AGRICULTUAL EMPLOYER DEFENDANTS

21.     At all times relevant to this complaint, Defendant O. J. Smith Farms, Inc. (hereinafter "SFI") is and has been a for profit, closely held corporation that was and is organized under the laws of the state of North Carolina since February 21, 1957, for the purpose of, among others, producing and marketing tobacco, sweet potatoes and other agricultural products for interstate commerce within and without North Carolina. All of the named Plaintiffs and the workers that they seek to represent were jointly employed by SFI and the SBHLP Defendants in the production of tobacco and sweet potatoes for interstate commerce.

21A.     During each of the three chronological years immediately preceding the date on which this action was filed, upon information and belief, the plaintiffs (excluding Plaintiff Victorino Felix Antonio in 2018) and the workers that they seek to represent were employed in an enterprise that was owned and operated by SFI and by the defendants alleged in ¶21 above that:

(a)     had and has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by some person or entity other than the defendants, and

(b)     is and for each chronological year starting with January 1, 2017 and continuing through the present date, was an enterprise whose annual gross volume of sales made or

business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

22.     The registered agent for service of process on SFI is Orpha Gene Watson, 12675 NC Highway 28, Whitakers, NC 27891, Tel: (252)437-1721.

23.     Upon information and belief, at all times relevant to this complaint, defendants Peyton G. McDaniel and Sandra W. McDaniel were and are officers and part-owners of defendant SFI, and participated in the day to day operation and control of SFI.  They did this by:

A.     Being in the field with the named Plaintiffs described in ¶¶15A and 19 above nearly every day that those named Plaintiffs and the H-2A workers they seek to represent performed any work for these defendants,

B.     Driving a truck back and forth between the fields and the tobacco barns to transport to the tobacco barns the tobacco being harvested to enable those H-2A workers to perform their daily work duties,

C.     Suffering or permitting those same H-2A workers to work at the tobacco barns of the Smith Farms Defendants,

D.     Providing the equipment necessary for those H-2A workers to cut sweet potato plants for use in the production of sweet potatoes,

E.     Directing the specific employment activities of the plaintiffs and the H-2A workers they seek to represent on a regular basis by giving them instructions as to how to perform their work for SFI either directly or by relaying those instructions to the plaintiffs and those H-2A workers through one or more onsite supervisory personnel employed by those defendants and SFI,

F.     Controlling that work for SFI on a regular basis by engaging in the activities described in ¶17 above,

14

G.      Setting the location(s) of that work for SFI on a daily basis,

H.      Contributing to the determination as to how and when they were to be paid for the work that the plaintiffs and the H-2A workers they seek to represent performed for SFI,

I.      Providing and maintaining the migrant housing required by the H-2A program to house at least some if not all of the named Plaintiffs in 2018 and 2019.

24.      At all times relevant to this complaint, Defendant Greenleaf Nursery Co. (hereinafter "Greenleaf") is and has been a for profit, closely held corporation that was and is organized under the laws of the state of Oklahoma since September 2, 1960 registered to do business in North Carolina since May 14, 2015, for the purpose of, among others, growing and marketing nursery products on a wholesale basis within and without Oklahoma for interstate commerce.  Victorino Felix Antonio and the workers that he seeks to represent were jointly employed by Greenleaf and the SBHLP Defendants in the performance of manual labor for the production of wholesale nursery products for interstate commerce.

24A.      During each of the three chronological years immediately preceding the date on which this action was filed, upon information and belief, Plaintiff Victorino Felix Antonio and the workers that he seeks to represent were employed in an enterprise that was owned and operated by Greenleaf by the defendants alleged in ¶24 above that:

(a)      had and has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by some person or entity other than the defendants, and

(b)      is and for each chronological year starting with January 1, 2017 and continuing through the present date, was an enterprise whose annual gross volume of sales made or

15

business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

25.     The registered agent for service of process on Greenleaf is CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615-6417, Tel: (877)331-2982 (Greenleaf).

26.     Upon information and belief, at all times relevant to this complaint, defendant Greenleaf, acting through its local managers and supervisors at its facility located at 2349 Chinquapin Road, Tarboro, North Carolina 27886 in Edgecombe County, North Carolina, was and is a closely held, and for-profit corporation, and participated in the day to day operation and control of plaintiff Victorino Felix Antonio and the H-2A workers that named plaintiff Victorino Felix Antonio seeks to represent.  That operation and control by Defendant Greenleaf of the work activities of named plaintiff Victorino Felix Antonio and the H-2A workers he seeks to represent occurred by directing the specific employment activities of that same plaintiff and the H-2A workers he seeks to represent on a regular basis when Greenleaf, acting through its supervisory personnel, gave them instructions as to how to perform their work for Greenleaf either directly or by relaying those instructions to plaintiff Victorino Felix Antonio and those same H-2A workers through one or more onsite supervisory personnel employed by defendant Greenleaf, controlling that work for Greenleaf on a regular basis by engaging in the activities described in ¶17 above, setting the location(s) of that work by Plaintiff Victorino Felix Antonio and the H-2A workers he seeks to represent for Greenleaf on a daily basis, and contributing to the determination as to how and when they were to be paid for the work that plaintiff Victorino Felix Antonio and the H-2A workers he seeks to represent performed for Greenleaf.

27.     At all of those same time periods in 2018 and/or 2019 all of the named plaintiffs (excluding Victorino Felix Antonio and plaintiff Humberto Antonio Hernandez in 2018 and excluding plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) and the other migrant agricultural workers that they seek to represent were furnished by the SBHLP Defendants to perform and did perform this "off contract" work for the Boseman Farm Defendants, those same plaintiffs and those other migrant agricultural workers the named plaintiffs seek to represent possessed H-2A visas obtained by the SBHLP Defendants based on the same four (4) labor certification applications described above that the SBHLP Defendants made under 20 C.F.R. § 655.132 that specifically did not list fixed site agricultural employer defendant BFI as an authorized fixed site agricultural employer to which the SBHLP Defendants were permitted and certified to furnish H-2A workers in both of those years.  Because that work was "off contract" agricultural work performed without the authorization and certification required by 20 C.F.R. § 655.132(b)(1), it was illegal agricultural work performed by the named Plaintiffs as migrant agricultural workers and the workers they seek to represent as defined by 29 U.S.C. § 1802(8)(A) and 29 C.F.R. §§ 500.20(n) and 500.20(p)(2).

28.     At all times relevant to this complaint, Defendant Boseman Farms, Inc. (hereinafter "BFI") is and has been a for profit, closely held corporation that was and is organized under the laws of the state of North Carolina since December 22, 1997, for the purpose of, among others, producing and marketing cucumbers, sweet potatoes, watermelons, and other agricultural products within and without North Carolina.  All of the named Plaintiffs and the workers that they seek to represent were jointly employed by BFI and the SBHLP Defendants in the production of cucumbers and sweet potatoes for interstate commerce.

28A.    During each of the three chronological years immediately preceding the date on which this action was filed, upon information and belief, the named plaintiffs (excluding Plaintiff Victorino Felix Antonio in 2018) and the workers that they seek to represent were employed in an enterprise that was owned and operated by BFI and by the defendants alleged in ¶28 above that:

(a)     had and has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by some person or entity other than the defendants, and

(b)     is and for each chronological year starting with January 1, 2017 and continuing through the present date, was an enterprise whose annual gross volume of sales made or business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29.     The registered agent for service of process on BFI is defendant Joel M. Boseman, 200 West Bridges Street, Battleboro, NC 27809, Tel: (252)446-3636.

30.     Upon information and belief, at all times relevant to this complaint, defendants Joel M. Boseman and Jean J. Boseman were and are the President and Vice-President and sole owners of defendant BFI, and participated in the day to day operation and control of BFI by directing the specific employment activities of the plaintiffs (excluding Victorino Felix Antonio in 2018) and the migrant agricultural workers they seek to represent on a regular basis by giving them instructions as to how to perform their work for BFI either directly or by relaying those instructions to the plaintiffs (excluding Victorino Felix Antonio in 2018) and those migrant agricultural workers through one or more onsite supervisory personnel employed by those defendants and BFI, controlling that work for BFI on are regular basis by engaging in the activities described in ¶17 above, setting the location(s) of that work for BFI on a daily basis, and contributing to the

determination as to how and when they were to be paid for the work that the plaintiffs (excluding Victorino Felix Antonio in 2018) and the H-2A workers that they seek to represent performed for BFI.

31.     For all of 2018 and all of 2019, Greenleaf, Smith Farms, and Boseman Farms all had a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the named plaintiffs and the work of each plaintiff and all of the workers with H-2A visas that the SBHLP defendants furnished to perform manual labor for Greenleaf, Smith Farms, or Boseman Farms at any time in the months from March through November in 2018 and/or 2019 in the planting and hand harvest of sweet potatoes, the harvest of tobacco, and/or the harvest of pickle cucumbers on real property owned or controlled by the Greenleaf, Smith Farms, or Boseman Farms Defendants, and each had a valid Federal Employer Identification Number.

## VI.     H-2A FARM LABOR CONTRACTOR DEFENDANTS

32.     At all times relevant to this action, defendant Salvador Barajas resided and continues to reside, did business and continues to do business at 141 Fillmore Avenue, N.E., Lake Placid, Florida 33852 in Highlands County, Florida.

33.     Pursuant to 20 C.F.R. §§ 655.132(a)-(b) from in or about March through the end of November 2018 and 2019, Salvador Barajas doing business as SBHLP, Inc. (collectively "SBHLP" or "SBHLP Defendants") furnished and jointly employed the named plaintiffs and approximately 150 other workers with H-2A visas to and with all of the fixed site agricultural employer defendants named in this Complaint. During this same time period, the SBHLP Defendants together with all of the fixed site agricultural employer Defendants jointly employed the named plaintiffs and the members of the proposed NCWHA and AWPA classes and FLSA collective action within the meaning of N.C. Gen. Stat. § 95-25.2(3) and (5), and 29 U.S.C. §§ 203(d), 203(g), and 1802(5) to

perform the hand labor described above for the SBHLP Defendants and the fixed site agricultural employer defendants on real property owned or controlled by those same fixed site agricultural employer defendants.

34. As defined by the H-2A regulations, 20 C.F.R. §§ 655.103(b) and 655.1300(c), in or about March through the end of November in both 2018 and 2019, the SBHLP Defendants an employer of the H-2A workers that they furnished to the various fixed site agricultural employer defendants and, along with those same fixed site agricultural employers, jointly employed the eighteen named plaintiffs and the members of the proposed NCWHA and AWPA classes and FLSA collective action to perform the various forms of hand labor in agriculture that are described above in this Complaint for both the SBHLP Defendants and all of the fixed site agricultural employer Defendants on real property owned or controlled by those same fixed site agricultural employer Defendants.

35. For all of 2018 and 2019, the Barajas defendants had a place of business in the U.S., a means to be contacted for employment, the ability to jointly control the work of the named plaintiffs and the work of all workers with H-2A visas who performed any work from March through November 2018 and 2019 for the Barajas Defendants and one or more of the fixed site agricultural Defendants in the performance of manual hand labor as described above in this Complaint on real property owned or controlled by those same fixed site agricultural employer Defendants, and had a valid Federal Employer Identification Number.

36. Either personally and/or through his personal agents and employees, Salvador Barajas directed, controlled, and supervised the work of the eighteen named plaintiffs and all H-2A workers whom the SBHLP Defendants furnished to the fixed site agricultural employer defendants

to perform work exclusively for those same fixed site agricultural employer defendants in the fields or nursery of one or more of those same fixed site agricultural employer defendants.

## VII. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

37. An agricultural employer or labor contractor in the United States may import H-2A workers if the U.S. Department of Labor ("USDOL") certifies that there are not enough domestic workers to perform the job and that the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

38. Employers requesting H-2A workers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.122, 653.501, and 655.121(a)(3). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. 20 C.F.R. § 655.122(a).

39. Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed. The employer must provide a copy of the work contract establishing those terms and conditions to both the H-2A workers and workers engaged in corresponding employment. 29 C.F.R. § 655.103(b).

40. To receive H-2A workers, housing meeting the applicable housing standards must be provided at no cost to H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day. 20 C.F.R. §§ 655.122(d) and 655.1306(b)(6).

Case 5:20-cv-00086-FL  Document 1  Filed 03/09/20  Page 21 of 58

41. An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

## VIII. <u>STATEMENT OF FACTS</u>

42. On or about January 3, 2018, the SBHLP defendants submitted the original of an Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order") in the form of an application to the U.S. Department of Labor (USDOL) Employment and Training Administration for permission to bring in up to 55 foreign H-2A workers from March 5 to November 15, 2018 ("January 3, 2018 Clearance Order"). *See* Plaintiffs'' Exhibit A attached (pertinent excerpts from that original). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, based upon this Clearance Order which listed defendants Greenleaf and SFI as two of the three fixed site agricultural employers but did not list BFI.

43. On or about Feb. 20, 2018, the SBHLP defendants submitted the original of an Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order") in the form of an application to the U.S. Department of Labor Employment and Training Administration, for permission to bring in up to 122 additional foreign H-2A workers from April 28 to November 30, 2018 ("February 20, 2018 Clearance Order"). *See* Plaintiffs'' Exhibit B attached (pertinent excerpts from that original). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, based upon this Clearance Order which again listed defendants Greenleaf and SFI as two of five fixed site agricultural employers but did not list BFI.

44.     On or about Dec. 31, 2018, the SBHLP defendants submitted the original of an

Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order") in the form

of an application to the U.S. Department of Labor Employment and Training Administration,  for

permission to bring in up to 74 foreign H-2A workers from March 1 to November 30, 2018 ("Dec.

31, 2018 Clearance Order").  *See* Plaintiffs'' Exhibit C attached (pertinent excerpts from that

original).  On Feb. 25, 2019 USDOL approved an H-2A Application for Temporary Employment

Certification, Form ETA-9142A based upon this Clearance Order, which again listed defendants

Greenleaf and SFI as two of five fixed site agricultural employers but did not list BFI.

45.     On or about Feb. 12, 2019, the SBHLP defendants submitted the original of an

Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order") in the form

of an application to the U.S. Department of Labor Employment and Training Administration,  for

permission to bring in up to 120 additional foreign H-2A workers from April 15 to November 30,

2018 ("February 12, 2019 Clearance Order").  *See* Plaintiffs'' Exhibit D attached (pertinent excerpts

from that original).  On April 2, 2019, USDOL approved the H-2A Application for Temporary

Employment Certification, Form ETA-9142A based upon this Clearance Order, which again listed

defendants Greenleaf and SFI as two of five fixed site agricultural employers but did not list BFI.

46.     However, in both 2018 and 2019, BFI was included as the lawful employer of H-2A

workers procured by The North Carolina Grower's Association, Inc. ("NCGA") of which it was a

member in both 2018 and 2019.  As part of that employment BFI actually paid the H-2A workers

procured by the NCGA all promised wages at the same adverse effect wage rate (AEWR) that was

disclosed to the plaintiffs and the workers they seek to represent as alleged in ¶49 below.  On

information and belief, in both 2018 and 2019, the H-2A workers obtained by the NCGA for BFI

arrived and started to work for BFI on or about March 23 of each year.  In addition, in 2019,

23

pursuant to 20 C.F.R. § 655.132(a)-(b), farm labor contractor José M. Gracia Harvesting, Inc. ("Gracia") listed BFI in its Clearance Order application for permission to obtain and furnish approximately 111 H-2A workers to harvest sweet potatoes for BFI from on or about September 1, 2019 through on or about November 29, 2019. The USDOL granted that application in 2019 and those H-2A workers were lawfully furnished by Gracia and lawfully harvested sweet potatoes for BFI for that same time period in 2019.

      47.    Each of the Clearance Orders filed by the SBHLP defendants provided a job description and wage rates for each crop activity in both 2018 and 2019. For the hand harvest of tobacco and sweet potatoes the January 3, 2018 and February 20, 2018 Clearance Orders copied in Plaintiff's Exhibit A and B attached specified that named plaintiffs Marcos Benitez Gonzalez and Isaac Gonzalez Hernandez and the H-2A workers they seek to represent that were jointly employed by and/or furnished to the Smith Farms defendants and the SBHLP defendants in the 2018 agricultural season in North Carolina to perform that work would be paid at an hourly rate of at least $11.46/hour. For the manual labor nursery work the January 3, 2018 and February 20, 2018 Clearance Orders copied in Plaintiff's Exhibit A and B attached specified that the named plaintiff and the H-2A workers jointly employed by and/or furnished to defendant Greenleaf and the SBHLP defendants to perform that work would be paid at an hourly rate of $11.46/hour.

      48.    For the hand harvest of tobacco and sweet potatoes the December 31, 2018 and February 12, 2019 Clearance Orders copied in Plaintiff's Exhibit C and D attached specified that the named plaintiffs and the H-2A workers jointly employed by and/or furnished to the Smith Farms defendants and the SBHLP defendants to perform that work at an hourly rate of $12.25/hour with piece rate sweet potato harvest work paid at the rate of $.50 5/8 bushel bucket with a guaranteed hourly rate of at least $12.25/hour. For the manual labor nursery work the December 31, 2018 and

February 12, 2019 Clearance Orders copied in Plaintiff's Exhibit A and B attached specified that the named plaintiff and the H-2A workers jointly employed by and/or furnished to defendant Greenleaf and the SBHLP defendants to perform that work would be paid at an hourly rate of $12.25/hour.

49.     Pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), before any of the named plaintiffs and the employee that the respective plaintiff(s) seeks to represent began their joint employment by any defendant, all defendants named in this action disclosed to the named plaintiffs and the members of the NCHWA class, AWPA class, and the FLSA collective that the respective named plaintiff(s) seek to represent employment practices and policies with regard to promised wages at the wage rates that are described in ¶¶47 and 48 above, payment of those wage rates for all hours worked, payment of all wages when due on the regular weekly payday, and no use or application of any unlawful wage deductions which reduced a worker's wages below those same wage rates.  They also disclosed the employment practice and policy that is described in ¶62 below.

50.     In both 2018 and 2019, the SBHLP Defendants, the Smith Farms Defendants, and the Boseman Farms Defendants did not count as hours worked travel time from one field to another that was all part of that day's work after the named Plaintiffs (except plaintiff Victorino Felix Antonio in 2018) and the H-2A co-workers had started work in the fields for the day.  On average this resulted in the undercounting and underpayment of approximately one-half hour per workday in each workweek during those years.

51.     As a result in 2018 and 2019 the SBHLP Defendants and the Smith Farms Defendants failed to pay the named plaintiffs (except plaintiff Victorino Felix Antonio in 2018) and the H-2A workers they seek to represent all wages when due on the regular payday for each workweek in those years at the AEWR hourly wage rate for all hours worked in violation of N.C.Gen.Stat. § 95-25.6.  This cost those plaintiffs and the H-2A workers they seek to represent an

amount in wages equal to approximately 2.5 hours of wages per workweek at the adverse effect wage rate that was applicable to the year in which the work was performed.

52.     As a result in both 2018 and 2019 the SBHLP Defendants and the Boseman Farms Defendants failed to pay the named plaintiffs (except plaintiff Victorino Felix Antonio in 2018) and the migrant agricultural workers they seek to represent all wages when due on the regular payday for each workweek in those year at the AEWR hourly wage rate for all hours worked in violation of N.C.Gen.Stat. § 95-25.6 and 29 U.S.C. § 1822(a).  This cost the plaintiffs and the migrant agricultural workers they seek to represent an amount in wages equal to approximately 2.5 hours of wages per workweek at the adverse effect wage rate that was applicable to the year in which the work was performed.

53.     In addition, in 2019 for at least two workweeks ending in or around June 2019 or the first week of July 2019, the SBHLP Defendants and the Boseman Defendants failed to pay named plaintiffs Juan Javier Varela Cuellar and Eric Jacinto Wences Vasquez and other migrant agricultural workers whom the named plaintiffs seek to represent all promised wages when due on their regular payday at the rate of $12.25/hour for all hours worked in violation of N.C.Gen.Stat. § 95-25.6 and 29 U.S.C. § 1822(a).  Instead, they paid those named plaintiffs and those workers in cash at the rate of $12.00/hour.  As a result of these intentional actions of those defendants, plaintiffs Juan Javier Varela Cuellar and Eric Jacinto Wences Vasquez and the other migrant agricultural workers whom the named plaintiffs seek to represent were not paid promised wages at the AEWR rate that those defendants disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.2(16), 95-25.6, and 95-25.13(1)-(2).

54.     In both 2018 and 2019 the Boseman Defendants or their agents (those agents included a fulltime employee of BFI who went by the name of Olvin) all personally and jointly

participated in the day-to-day decisions by BFI that involved the employment of the named Plaintiffs (excluding Plaintiff Victorino Felix Antonio in 2018) and the migrant agricultural workers they seek to represent. Those day-to-day decisions included, but are not limited to, the following:

A.      Onsite supervision by Olvin of the field work performed by the named plaintiffs (excluding Plaintiff Victorino Felix Antonio) and the other migrant agricultural workers they seek to represent.

B.      Decisions as to which and how many of the migrant agricultural workers furnished by the SBHLP Defendants would be hired by the Boseman Farms Defendants each day.

C.      Decisions as which members of the entire crew of migrant agricultural workers (excluding Plaintiff Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) available from the SBHLP Defendants with H-2A visas which authorized them to work for fixed site agricultural employers other than BFI would be hired by BFI on a day to day basis and what field work tasks would be allocated among them in in 2018 and 2019.

D.      Decisions as to which vehicles and drivers would be used (including but not limited to Olvin) to transport those workers between the labor camp in which they were housed and the worksite at which they were employed.

E.      Decisions as to the intentional failure of the Boseman Farms Defendants and the SBHLP Defendants to maintain payroll records that contained all of the information required by 29 U.S.C. § 1821(d)(1) for the wages that one or more of those same defendants paid to the named plaintiffs and the migrant agricultural workers they seek to represent for the work they performed for those defendants in the 2018 agricultural season and then again in the 2019 season in North Carolina.

F.       Intentional decisions in both 2018 and 2019 to have Olvin to deliver wages to the named plaintiffs in cash at the rate described in ¶53 above (excluding Plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) on a weekly basis at the Boseman Farms packing house in Nash County without the provision of any wage statements that contained all of the information required by 29 U.S.C. § 1821(d)(2) for the off-contract agricultural labor that the named plaintiffs (excluding Plaintiffs Victorino Felix Antonio Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) and the migrant agricultural workers they seek to represent performed in 2018 and 2019 for the Boseman Farms Defendants.

G.       Intentional decisions in both 2018 and 2019 to knowingly provide false or misleading information to the named plaintiffs (excluding Plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) as to the correct hourly wage rate the plaintiffs were supposed to receive by the actions that are described in ¶53 above.

H.       Intentional decision to not provide the written disclosures to the named plaintiffs (excluding Plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) in both 2018 and 2019

55.      In 2018 and 2019, upon information and belief, both of the individual Boseman defendants or their agents were physically present from time to time in the fields owned, operated or controlled by the Boseman Farms Defendants, and, upon information and belief, provided verbal and non-verbal guidance and instructions to the named Plaintiffs (excluding plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019), their supervisors, and/or the migrant agricultural workers that the named

Plaintiffs seek to represent in this action for the Clearance Order Job contract work that was performed by those workers in 2018 and/or 2019.

56.     In 2018 and 2019, upon information and belief, both of the individual Boseman Defendants or their agents were physically present from time to time in the fields or labor camp used to house the named Plaintiffs (excluding plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019), and, upon information and belief, and acting with the SBHLP Defendants and through one or more agents of the Boseman Defendants, provided verbal and non-verbal guidance, direction, and instructions to an assistant of Salvador Barajas known as "Pablo" for Pablo to intentionally use or for Pablo to be intentionally causing to be used one or more vehicles owned by one or more of the SBHLP Defendants to drive that vehicle as part of the provision of transportation for the migrant agricultural workers working off-contract that the SBHLP Defendants furnished and transported for Boseman Farms Defendants in those same years when Pablo was not authorized and registered nor properly licensed to do so in violation of 29 U.S.C. §§1811(b) and 1841(b)(1)(B).

57.     At all times relevant to this complaint in 2018 or 2019 when the SBHLP Defendants furnished the named plaintiffs (excluding plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and plaintiff Tiburcio Antonio Manuel in both 2018 and 2019) and the employees that they seek to represent to the Boseman Farms Defendants to drive or perform off-contract field work for Boseman Farms and/or other fixed site agricultural employers who were not listed as required by 20 C.F.R. § 655.132(b) in the labor certification clearance order application that the SBHLP Defendants filed with the U.S. Department of Labor (DOL) in 2018 and 2019, those same named Plaintiffs and the members of the proposed AWPA class were all jointly employed and transported as migrant agricultural workers as defined in 29 U.S.C. § 1802(8)

whose employment in agricultural employment was of a seasonal or other temporary nature, and who were required to be absent overnight from each such worker's permanent place of residence and whose off-contract work was not agricultural employment authorized pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c).

58. For each season in 2018 and/or 2019 that each of the named plaintiffs (excluding plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez in 2018 and Tiburcio Antonio Manuel in 2018 and 2019) and the H-2A workers that they seek to represent in the FLSA collective action, and AWPA and NCWHA class actions described in ¶¶76-97 below traveled directly from Mexico to North Carolina to work for one or more of the Boseman Farms Defendants under the H-2A program, each of the plaintiffs and the members of the FLSA collective action and NCWHA class action described in ¶¶76-97 below were required to pay a total of approximately USD $560 (for those coming from the Mexican state of the Estado de Mexico) or a total of approximately USD $483 (for those coming from the Mexican state of the San Luis Potosí) for the following expenses as a condition of the first workweek of their joint employment by the Boseman Farms and the SBHLP Defendants in March, April or early May of both 2018 and 2019: USD $190 to the U.S. Consulate in Mexico for an H-2A visa, approximately USD $5 for visa processing fees to Defendant's agent in Mexico, approximately MXP $1,300 or USD $68.42 for a bus ticket from the state of Estado de Mexico to Monterrey, Mexico (for those coming from the state of Estado de Mexico in 2019) or approximately MXP $600 or USD $31.58 for a bus ticket from San Luis Potosí to Monterrey, Mexico in 2019 (for those coming from the state of San Luis Potosí), or approximately MXP $800 or USD $42.10 for a bus ticket from San Luis Potosí to Matamoros, Mexico in 2018 (for those coming from the state of San Luis Potosí), approximately MXP $1,300 or USD $68.42 for the four nights (for those coming from the Estado de Mexico) or approximately

MXP $600 or USD $31.58 for the two nights (for those coming from the state of San Luis Potosi) that they were required to remain in in a hotel in Monterrey or Matamoros, Mexico as a condition of obtaining the required Consular interview in that city to obtain an H-2A visa to be employed by the Defendant, USD $6.00/each for the I-94 border crossing card required by the U.S. government to enter the USA as a non-resident alien, USD $160 each for another one-way bus ticket from Monterrey or Matamoros, Mexico to Nash County or Edgecombe County, North Carolina in 2018 or 2019, and $12.46/day in 2019 or $12.28/day in 2018 for five (5) days' subsistence (USD $62.30 in 2019 or $61.40 in 2018) as each of the plaintiffs and the members of the FLSA collective action and the NCWHA and AWPA class actions in 2018 and 2019 were more than a thousand miles from home without any capacity to do anything but purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

59.    For each season in 2018 and/or 2019 that named plaintiff Victorino Felix Antonio and the H-2A workers that he seeks to represent in the FLSA collective action and NCWHA class actions described in ¶¶76-90 below traveled directly from Mexico to North Carolina to work for Defendant Greenleaf under the H-2A program, plaintiff Victorino Felix Antonio and the members of the FLSA collective action and NCWHA class action described in ¶¶76-90 below were required to pay a total of approximately USD $483 (for those coming from the Mexican state of the San Luis Potosí) for the following expenses as a condition of the first workweek of their joint employment by Defendant Greenleaf and the SBHLP Defendants in or about early March, April or May or September of 2018 and/or 2019: USD $190 to the U.S. Consulate in Monterrey, Mexico for an H-2A visa, approximately USD $5 for visa processing fees to Defendant's agent in Mexico, approximately MXP $600 or USD $31.58 for a bus ticket from San Luis Potosí to Monterrey, Mexico, approximately MXP $600 or USD $31.58 for the two nights (for those coming from the

state of San Luis Potosi) they were required to remain in in a hotel in Monterrey, Mexico as a condition of obtaining the required Consular interview in that city to obtain an H-2A visa to be employed by the Defendant, USD $6.00/each for the I-94 border crossing card required by the U.S. government to enter the USA as a non-resident alien, USD $160 each for another one-way bus ticket from Monterrey, Mexico to Nash County or Edgecombe County, North Carolina, and $12.46/day in 2019 or $12.28/day in 2018 for five (5) days' subsistence (USD $62.30 in 2019 or $61.40 in 2018) as plaintiff Victorino Felix Antonio and the members of the FLSA collective action and the NCWHA class action were more than a thousand miles from home without any capacity to do anything but purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

60.     For each season in 2018 and/or 2019 that named plaintiffs Tiburcio Antonio Manuel, Humberto Antonio Hernandez, and the H-2A workers that they seek to represent in the FLSA collective action and the NCWHA class actions described in ¶¶76-90 below traveled directly from Mexico to North Carolina to work for one or more of the Smith Farms Defendants under the H-2A program, plaintiffs Tiburcio Antonio Manuel , Humberto Antonio Hernandez, and the members of the FLSA collective action  and NCWHA class action described in ¶¶76-90 below were required to pay a total of approximately USD $483 (for those coming from the Mexican state of the San Luis Potosí through the U.S. Consulate in Monterrey, Mexico) or a total of approximately $531.50 for those coming from San Luis Potosí through the U.S. Consulate in Matamoros, Mexico) for the following expenses as a condition of the first workweek of their joint employment by the Smith Farms Defendants and the SBHLP Defendants in or about late April or early May of September 2018 and 2019: USD $190 to the U.S. Consulate in Mexico for an H-2A visa, approximately USD $5 for visa processing fees to Defendant's agent in Mexico, approximately MXP $1,300 or USD

$68.42 for a bus ticket from the state of Estado de Mexico to Monterrey, Mexico (for those coming from the state of Estado de Mexico in 2019) or approximately MXP $600 or USD $31.58 for a bus ticket from San Luis Potosí to Monterrey, Mexico in 2019 (for those coming from the state of San Luis Potosí), or approximately MXP $800 or USD $42.10 for a bus ticket from San Luis Potosí to Matamoros, Mexico in 2018 (for those coming from the state of San Luis Potosí), approximately MXP $1,300 or USD $68.42 for the four nights (for those coming from the Estado de Mexico) or approximately MXP $600 or USD $31.58 for the two nights (for those coming from the state of San Luis Potosi) that they were required to remain in in a hotel in Monterrey or Matamoros, Mexico as a condition of obtaining the required Consular interview in that city to obtain an H-2A visa to be employed by the Defendant, USD $6.00/each for the I-94 border crossing card required by the U.S. government to enter the USA as a non-resident alien, USD $160 each for another one-way bus ticket from Monterrey or Matamoros, Mexico to Nash County or Edgecombe County, North Carolina in 2018 or 2019, and $12.46/day in 2019 or $12.28/day in 2018 for five (5) days' subsistence (USD $62.30 in 2019 or $61.40 in 2018) as each of the plaintiffs and the members of the FLSA collective action and the NCWHA class action in 2018 and 2019 were more than a thousand miles from home without any capacity to do anything but purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

61.     All of the expenses described in ¶¶58-60 above of this Complaint were primarily for the benefit or convenience of Defendant Greenleaf, the Smith Farms Defendants, or the Boseman Farms Defendants and an incident of and necessary to the employment of the Plaintiffs and the members of the FLSA collective and NCWHA and/or AWPA class actions by and travel to work for Defendant Greenleaf, the Smith Farms Defendants, and the Boseman Farms Defendants in both

2018 and 2019 within the meaning of 29 C.F.R. §§ 531.3(d)(1), 531.32(a), 531.32(c), 778.217(a), and 778.217(b)(3) and 13 NCAC Tit. 12 § .0301(d).

62.     In the four (4) H-2A clearance order employment contracts for 2018 and 2019 that are attached to this Complaint, the SBHLP Defendants disclosed promised wages in a contract provision that mirrored the regulatory requirement of 20 C.F.R. § 655.122(h)(1)(2015) in the form of reimbursement after completion of 50% of the contract period in the H-2A job order employment contract for the subsistence costs of at least $12.26 per day in 2018 and $12.46 per day in 2019 of inbound and outbound travel from the place from which one or more of the Plaintiffs and the members of the FLSA collective action, the NCWHA class action, and the AWPA class action were furnished by the SBHLP Defendants to work for the Boseman Farms Defendants, the Smith Farms Defendants, and Defendant Greenleaf to the place of their joint employment in 2018 and 2019 with those same defendants, and the payment of those subsistence costs on their return journey.

63.     The SBHLP Defendants and the fixed site agricultural employer defendant or fixed site agricultural employer defendants who jointly employed them that are named in ¶61 above of this Complaint did not fully reimburse those of the named Plaintiffs and the members of the FLSA collective and the NCWHA and/or AWPA class actions who were jointly employed by them for all of those inbound expenses that are described in ¶¶58-60 above of this Complaint at any time in 2018 and/or 2019 during the time periods that the SBHLP Defendants and those same fixed site agricultural employer defendant or defendants or employed them or in the time periods on or before the first regular payday during those same time periods.

64.     The failure of the defendants named or described in ¶¶61 and 63 above of this Complaint to reimburse the named plaintiffs and the members of the FLSA collective and NCWHA and/or AWPA class actions for all of those expenses caused a *de facto* wage deduction and wage

kickback to the those same defendants which reduced the wages that the named plaintiffs and the members of the FLSA collective and NCWHA and/or AWPA class actions received for the first workweek of work that they performed for those same defendants below the minimum rate required by 29 U.S.C. § 206(a) of $7.25 per hour and the promised wages minimum hourly AEWR rate for both 2018 and 2019 in violation of N.C.Gen.Stat. § 95-25.6 and/or 29 U.S.C. § 1822(a).

65.     For the 2018 agricultural season, when named plaintiffs Marcos Benitez Gonzalez, Isaac Gonzalez Hernandez, Tiburcio Antonio Manuel, and the H-2A workers that they seek to represent in the FLSA collective action and NCWHA class actions described in ¶¶76-90 below returned directly from North Carolina to Mexico after they had completed their authorized work under the H-2A program for one or more of the Smith Farms Defendants and the SBHLP Defendants at the end of the 2018 season in or about November 2018, each of those same three named plaintiffs and the members of the FLSA collective action  and NCWHA class action described in ¶¶76-90 below were required to pay a total of approximately USD $265.20 (for those returning to the Mexican state of the Estado de Mexico) or a total of approximately USD $216.10 (for those like these two named plaintiffs returning to the Mexican state of the San Luis Potosí) for the following expenses as a condition of the lawful termination of their joint employment under the H-2A program by the Smith Farms and the SBHLP Defendants: USD $160 each for a one-way bus ticket from Nash or Edgecombe County, North Carolina to Matamoros, Mexico, another approximately USD $31.58 (MXP $600) for a bus ticket from Matamoros, Mexico to San Luis Potosí in the state of San Luis Potosí, and $12.26/day for two (2) days' subsistence (USD $24.52) as each of those same two named plaintiffs and the members of the FLSA collection action and NCWHA class action were more than a thousand miles from home without any capacity to do

anything but purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

66. For the 2019 agricultural seasons, when named plaintiffs Martin Nelson Wences Vasquez, Eric Jacinto Wences Vasquez, Juan Javier Varela Cuellar, Rigoberto Carteras Jardon, and Alejandro De la Cruz Medina, and the H-2A workers from the Mexican state of Estado de Mexico that they seek to represent in the FLSA collective action and NCWHA class actions described in ¶¶76-90 below returned directly from North Carolina to Mexico after they had completed their authorized work under the H-2A program for one or more of the Smith Farms Defendants and the SBHLP Defendants at the end of the 2019 season in or about November 2019, each of those same five named plaintiffs and the members of the FLSA collective action and NCWHA class action described in ¶¶76-90 below were required to pay a total of approximately USD $68.42 for the cost of the one-way bus ticket from Monterrey, Mexico to Mexico City, Mexico as a condition of the lawful termination of their joint employment under the H-2A program by the Smith Farms and the SBHLP Defendants.

67. For the 2018 agricultural season, when named plaintiffs Victorino Felix Antonio, Humberto Antonio Hernandez, and the H-2A workers that they seek to represent in the FLSA collective action and NCWHA class actions described in ¶¶76-90 below returned directly from North Carolina to Mexico after they had completed their authorized work under the H-2A program for defendant Greenleaf and the SBHLP Defendants at the end of the 2018 season in or about November 2018, named plaintiff Victorino Felix Antonio, Humberto Antonio Hernandez, and the members of the FLSA collective action and NCWHA class action described in ¶¶76-90 below were required to pay a total of approximately USD $265.20 (for those returning to the Mexican state of the Estado de Mexico) or a total of approximately USD $216.10 (for those returning to the Mexican

state of the San Luis Potosí) for the following expenses as a condition of the lawful termination of their joint employment under the H-2A program by defendant Greenleaf and the SBHLP Defendants: USD $160 each for a one-way bus ticket from Nash or Edgecombe County, North Carolina to Monterrey, Mexico, another approximately USD $31.58 (MXP $600) for a bus ticket from Monterrey, Mexico to San Luis Potosí in the state of San Luis Potosí, and $12.26/day for two (2) days' subsistence (USD $24.52) as plaintiff Victorino Felix Antonio, Humberto Antonio Hernandez, and the members of the FLSA collection action and NCWHA class action were more than a thousand miles from home without any capacity to do anything but purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

68.     All of the expenses described in ¶¶65-67 above of this Complaint were primarily for the benefit or convenience of Defendant Greenleaf or the Smith Farms Defendants and an incident of and necessary to the employment of the Plaintiffs and the members of the FLSA collective and NCWHA class action through the lawful termination of that employment by and work for Defendant Greenleaf and the Smith Farms Defendants in both 2018 and 2019 within the meaning of 29 C.F.R. §§ 531.3(d)(1), 531.32(a), 531.32(c), 778.217(a), and 778.217(b)(3) and 13 NCAC Tit. 12 § .0301(d).

69.     The failure of the defendants named or described in ¶68 above of this Complaint to reimburse the named plaintiffs and the members of the FLSA collective and NCWHA class action for all of those expenses caused a *de facto* wage deduction and wage kickback to the those same defendants which reduced the wages that the named plaintiffs and the members of the FLSA collective and NCWHA class action received for the last workweek of work that they performed for those same defendants below the minimum rate required by 29 U.S.C. § 206(a) of $7.25 per hour and the promised wages minimum hourly AEWR rate for both 2018 and 2019, did not comply with

the written disclosures of promised wages made pursuant to N.C.Gen.Stat. §§ 95-25.2(16) and 95-25.13(1)-(2) in violation of N.C.Gen.Stat. § 95-25.6.

70.     Long before 2018 and in 2018-19, for at least four or five years before 2019 defendant BFI was and continues to be a member of The North Carolina Grower's Association, Inc. (hereinafter "NCGA").  Through that membership, defendant BFI regularly received educational materials, instruction, and guidance as to its obligations under the laws and regulations applying to the employment of migrant agricultural workers under the FLSA and the AWPA and workers under the H-2A program.  In addition, defendant BFI within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4) and 29 U.S.C. §§ 203(d) and 203(g) received guidance and those materials included the H-2A program requirements concerning reimbursement of inbound and outbound travel and subsistence expenses when those *de facto* wage deductions reduced the wage paid below the AEWR required by the H-2A program and/or below the minimum wage required by the FLSA, and the requirements of 20 C.F.R. § 655.132(a)-(b).

71.     Defendant SFI has continuously been in business as an agricultural employer and producer in eastern North Carolina since 1957.  The Smith Farms Defendants have used the services of SBHLP, Inc. to furnish them with H-2A workers before 2018.  For several years before 2018 the Smith Farms Defendants regularly received training received educational materials, instruction, and guidance through the GAP Connections, Inc. program as to its obligations under the laws and regulations applying to the employment of workers under the H-2A program.  *See* https://www.gapconnections.com/home.  Upon information and belief, that guidance and those materials specifically included the H-2A program requirements concerning reimbursement of inbound and outbound travel and subsistence expenses when those *de facto* wage deductions reduced the wage paid below the AEWR required by the H-2A program and/or below the minimum

wage required by the FLSA, and the obligation of all agricultural employers to pay all promised wages when due on the regular weekly payday for all of its employees for all hours worked in that workweek.

72.     In one form or another, defendant Greenleaf Nursery Co. has been continuously in business as a wholesale agricultural employer and nursery producer since 1945.  Greenleaf is one of North America's largest wholesale nursery growers, each year producing many millions of container grown plants for retailers, wholesale distribution centers and landscapers across the U.S. and Canada.  *See* https://greenleafnursery.com/page/About-Greenleaf-Nursery.  It has four large production facilities located in three (3) states and was and continues to be well-schooled in the requirements of the FLSA, the NCWHA, and the employment and use of H-2A workers long before 2018.

73.     Before this action was filed in U.S. District Court, an attempt was made by the Plaintiffs with both the SBHLP Defendants and the Boseman Defendants to resolve the AWPA claims that some of the named plaintiffs have before resort to litigation pursuant to 29 U.S.C. § 1854(c)(2).  That attempt was summarily rejected by the Boseman Defendants and ultimately unsuccessful with the SBHLP Defendants.

74.     For 2017, 2018, and 2019, the SBHLP Defendants retained and paid the National Agricultural Consultants LLC, 105 N. McNeil Street, Carthage, Moore County, North Carolina 28327 (hereinafter referred to as "Consultants"), as its agent in the United States of America to:

   (a)     Inform and educate SBHLP, Inc. about the requirements of the H-2A program and other applicable employment related laws and regulations,

   (b)     craft/modify all aspects of the job order employment contracts for H-2A workers with SBHLP, Inc.,

(c)  to conduct all interaction with the various branches of government involved in the certification of an application for alien employment under the H-2A program visa application either directly or indirectly through the use of the private employment service agency and/or agent(s) operating in Mexico that the SBHLP, Inc. designated to perform that function,

(d)  track the status of the H-2A workers that the defendant SBHLP, Inc. preferred to employ in taking the actions required to obtain an H-2A visa in 2018 and 2019,

(e)  make adjustments to the status of the H-2A workers that the Defendant SBHLP, Inc. preferred to employ based upon the information that Consultant received from the private employment service agency operating in Mexico that the SBHLP Defendants designated to perform that function in Mexico,

(f)  provide all necessary recruitment services, including but not limited to, visa processing assistance, for the H-2A workers that the SBHLP Defendants preferred to employ after those workers had been identified by the Jones Defendants through the use of the private employment service agency operating in Mexico that was designated to perform that function in Mexico for the SBHLP Defendants,

(g)  provide all necessary recruitment for the timely replacement of H-2A workers that the SBHLP Defendants preferred to employ if it was determined that any of those worker(s) were not available for employment with the SBHLP Defendants in any particular season through the use of the private employment service agency operated in Mexico as one of its recruiters that was designated to perform that function by the SBHLP Defendants,

(h)     provide consulting services as to relevant developments in the laws and court

decisions affecting the SBHLP Defendants' employment of H-2A workers.

75.     During the time in the 2018 and 2019 agricultural seasons in North Carolina and, upon information and belief, for several years before that, as part of their membership in the NCGA, the Boseman Farms Defendants paid the NCGA to act as its agent in the United States of America to perform some if not all of the services described in ¶74(a)-(h) above of this Complaint.

## IX.    NCWHA CLASS ALLEGATIONS

76.     Paragraphs 8 through 75 are realleged and incorporated herein by reference.

77.     To the extent alleged above in this Complaint, one or more of the named plaintiffs seek to represent three (3) separate NCWHA classes of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages due under N.C. Gen. Stat. §§ 95-25.2(16), 95-25.6, 95-25.13(2), 95-25.22, and 95-25.22(a1) and 13 NCAC Tit.12 .0803 for joint and several liability against each of the defendants named in those three (3) separate classes.  Those three (3) separate NCWHA classes are defined as follows:

(a)     **NCWHA Class #1** – The named plaintiffs and those H-2A workers who were jointly employed by the SBHLP Defendants and any of the following fixed site agricultural employer defendants at any time in 2018 and/or 2019 who were not paid all wages when due on the regular payday for their first workweek or their last workweek with those same joint employers based upon the application of the *de facto* wage deductions that are described in ¶¶58-61 and 63-69 above of this Complaint:

(1)     Greenleaf Nursery Co.

(2)     Boseman Farms, Inc., and its two principals, Joel M. Boseman and Jean J. Boseman (Boseman Farms Defendants).

41

       (3)     O. J. Smith Farms, Inc. and two of its principals, defendants Peyton G. McDaniel and his spouse, Sandra W. McDaniel (Smith Farms Defendants).

(b)    **NCWHA Class #2** – Those H-2A workers who were jointly employed by the SBHLP Defendants and any of the following fixed site agricultural employer defendants at any time in 2018 and/or 2019 who were not paid all wages when due for all hours worked on their regular payday based upon the employment practices and policies that are described in ¶¶50-52 above of this Complaint:

       (1)     Boseman Farms, Inc., and its two principals, Joel M. Boseman and Jean J. Boseman (Boseman Farms Defendants).

       (2)     O. J. Smith Farms, Inc. and two of its principals, defendants Peyton G. McDaniel and his spouse, Sandra W. McDaniel (Smith Farms Defendants).

(c)    **NCWHA Class #3** – Those H-2A workers who were jointly employed by the SBHLP Defendants and Boseman Farms, Inc., and its two principals, Joel M. Boseman and Jean J. Boseman (Boseman Farms Defendants) who were not paid all wages when due for all hours worked on their regular payday based upon the employment practices and policies that are described in ¶53 above of this Complaint.

78.    Joinder of all class members for each of the three proposed NCWHA Classes would be impracticable, if not impossible, based in part upon the fact that the named plaintiffs and all of the proposed class are migrant nationals of the Republic of Mexico, do not speak English, and do not currently possess the right to lawfully enter or remain within the U.S.A. Upon information and belief, the number of individuals in each of the proposed NCWHA Classes exceeds 40 people.

79. The questions of law or fact which are common to the members of the NCWHA Promised Wage Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are:

(a) Whether the respective fixed site agricultural defendants were joint employers in 2018 and 2019 with the SBHLP Defendants of the named plaintiffs and the H-2A workers and migrant agricultural workers performed the agricultural work that is described both in in this Complaint and in the Clearance Orders that are attached marked as Plaintiffs' Exhibit A-D attached on land that was owned or controlled those same respective fixed site agricultural employer defendants using housing that was furnished by them?

(b) Because of the *de facto* wage deductions described in ¶¶58-61 and 63-69, inclusive, above in this Complaint that occurred on or before their first regular payday for the first workweek and on or before their last regular payday for their last workweek in both 2018 and 2019 that those workers were employed or jointly employed to perform any sweet potato harvesting work, did the respective fixed site agricultural employer defendants and the SBHLP Defendants fail to compensate the named plaintiffs and those other class members at the AEWR rate?

(c) Because of the *de facto* wage deductions described in ¶¶58-61 and 63-69, inclusive, above in this Complaint that occurred on or before their first regular payday for the first workweek and on or before their last regular payday for their last workweek in both 2018 and 2019 that those workers were employed or jointly employed to perform any sweet potato harvesting work, did the respective fixed site agricultural employer

43

defendants and the SBHLP Defendants fail to compensate the named plaintiffs and those other class members at the FLSA minimum rate?

(d)     Did the defendants that are identified in ¶77(b) above engage in the employment practices and policies that are described in ¶53 above of this Complaint?

80.     As alleged above in this Complaint, the claims of the named Plaintiffs are typical of the claims of the NCWHA Classes identified in ¶¶77(a)-(c) above of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that at least one of the named Plaintiffs each has a NCWHA claim of the type described in paragraphs 77(a)-(c) above that turns in part on the status of the respective fixed site agricultural employer defendant and the SBHLP Defendants as joint employers under the FLSA and the NCWHA and the direct experience of that name Plaintiff(s) with the contested employment practices and policies that are described in ¶¶77(a)-(c) above.

81.     Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Class members.

82.     Plaintiffs will fairly and adequately represent the interests of the NCWHA Class.

83.     The undersigned counsel Robert J. Willis is an experienced litigator who has been named counsel for many class actions involving similar claims to those raised in this action.

## X.     FLSA COLLECTIVE ACTION ALLEGATIONS

84.     Paragraphs 8 through 75 are realleged and incorporated herein by reference.

85.     Pursuant to the collective action procedure specified at 29 U.S.C. §216(b) and the First Claim for Relief, the named Plaintiffs file this collective action for back wages and liquidated damages with joint and several liability against the same three defendant groups that identified in ¶¶77(a)(1)-(3) above and for each similarly situated person who files a Consent to

Sue required by 29 U.S.C. §§ 216(b) and 256 within the three-year time period immediately preceding the date on which this action is filed and continuing thereafter until judgment is entered by the Court who was jointly employed by one or more of the SBHLP Defendants and one or more of the fixed site agricultural employer defendants identified in ¶¶77(a)(1)-(3) above under the H-2A program at any time in 2017 or 2018 to perform any of the agricultural work that is described in this complaint and in Plaintiff's Exhibits A through D attached to it on land that was owned or controlled by one of those same fixed site agricultural employer defendants for the production of agricultural products for sale in interstate commerce.

86.     This FLSA collective action for the First Claim for Relief is on behalf of all named plaintiffs and those similarly situated H-2A workers or migrant agricultural workers whom the SBHLP Defendants and one or more of the defendant fixed site agricultural employers identified in ¶77(a)(1)-(3) above jointly employed for at least the first workweek of their employment in North Carolina in 2018 and/or 2019, or the last week of their joint employment in either of those same years whose weekly wage was reduced below $7.25/hour based upon the *de facto* wage deductions that are described in ¶¶58-61 and 63-69 above.

87.     As a term and condition of that joint employment of those same H-2A workers under the H-2A program by the SBHLP Defendants and one or more of the fixed site agricultural employer defendants, the named plaintiffs and those other H-2A workers and/or migrant agricultural workers were required to pay the *de facto* wage deductions that are described in ¶¶58-61 and 63-69, inclusive, above of this Complaint, thereby reducing the weekly wages that the named Plaintiffs and those other H-2A workers received free and clear for the work they performed in the first workweek and last workweek in North Carolina below the minimum wage required by 29 U.S.C. §§ 206(a) and 216(b).

88.     The *de facto* wage deductions referred to in ¶¶58-61 and 63-69 above were illegal under 20 C.F.R. §§ §§ 655.122(m), 655.122(p)(1) and 655.135(j)(2010), 29 C.F.R. §§ 531.2, 531.3(b), 531.3(d)(1), 531.29, 531.32(a), 531.32(c), 531.35, 778.217(a), and 778.217(b)(3) as to what deductions and charges are permitted to wages paid.

89.     The SBHLP Defendants and one or more of the defendant fixed site agricultural employers jointly and severally employed the respective named Plaintiffs and more than 30 other H-2A workers or migrant agricultural workers who performed off-contract work that they were not authorized to perform pursuant to a visa issued under the authority detailed in 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) in the cutting of sweet potato plants and/or harvesting cucumbers in at least the first workweek of work that the SBHLP Defendants were able to obtain for those same named Plaintiffs and a group of their other H-2A co-workers after they arrived in North Carolina after their transportation directly from Mexico to North Carolina.

90.     As a result of this failure of the SBHLP Defendants and those fixed site agricultural employer defendants to pay wages free and clear at the minimum rate required by 29 U.S.C. § 206(a) in the manner required by law, the wages that those same named Plaintiffs and the members of the collective action received free and clear from those defendants on or before their regularly scheduled payday for at least the first workweek and the last workweek that those same named Plaintiffs and the members of the collective action performed work in North Carolina for the SBHLP Defendants and the fixed site agricultural employers to whom or which the SBHLP Defendants furnished those workers in both 2018 and 2019 were less than the minimum wage required by 29 U.S.C. §206.

## XI.     AWPA CLASS ALLEGATIONS

91.     Paragraphs 8 through 68 are realleged and incorporated herein by reference.

92.     All named plaintiffs other than named plaintiff Tiburcio Antonio Manuel for 2018 and 2019, and named plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez for 2018 seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for a separate award of statutory damages for the 2018 season and for the 2019 season under 29 U.S.C. § 1854(c)(1)("AWPA Class") against the SBHLP Defendants and the Boseman Farms Defendants, jointly and severally.  The AWPA Class consists of all migrant agricultural workers described in ¶¶20 above of this Complaint for whom one or more of the SBHLP Defendants and the Boseman Farms Defendants intentionally committed the following AWPA violations:

(a)     For the 2018 season, used or caused to be used a driver who had a valid and appropriate license as provided by North Carolina law to operate the vehicle that Olvin, Pablo and Jeremias drove to transport the named plaintiffs to/from the fields or nursery where they worked in violation of 29 U.S.C. § 1841(b)(1)(B).

(b)     For the 2018 season, failed to pay wages when due in the manner alleged in ¶77(a)(2) above in violation of 29 U.S.C. § 1822(a) and in violation of the working arrangements that are contained in the Clearance Order Job Contract that are copied in Plaintiff's Exhibit A, B, C, and D attached and 29 U.S.C. § 1822(c).

(c)     For the 2018 season, failed to pay wages when due in the manner alleged in ¶77(b)(1) above in violation of 29 U.S.C. § 1822(a).

(d)     for the 2018 season, failed to pay wages when due in the manner alleged in ¶77(c) above in violation of 29 U.S.C. § 1822(a).

(e)     for the 2018 season, failed to provide the plaintiffs with wage statements containing all of the information required by 29 U.S.C. § 1821(d)(2).

(f)     for the 2018 season, failed to make, keep and preserve accurate payroll records which contain all of the information required by 29 U.S.C. § 1821(d)(1).

(g)     for the 2018 season, knowingly provide false or misleading information to the named plaintiffs as to the correct hourly rate of pay they were entitled to receive by law.

(h)     for the 2019 season, used or caused to be used a driver who did not have a valid and appropriate license as provided by North Carolina law to operate the vehicle that Olvin, Pablo and Jeremias drove to transport the named plaintiffs to/from the fields or nursery where they worked in violation of 29 U.S.C. § 1841(b)(1)(B).

(i)     for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(a)(2) above in violation of 29 U.S.C. § 1822(a) and in violation of the working arrangements that are contained in the Clearance Order Job Contract that are copied in Plaintiff's Exhibit A, B, C, and D attach.

(j)     for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(b)(1) above in violation of 29 U.S.C. § 1822(a).

(k)     for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(c) above in violation of 29 U.S.C. § 1822(a).

(l)     for the 2019 season, failed to provide the plaintiffs with wage statements containing all of the information required by 29 U.S.C. § 1821(d)(2).

(m)     for the 2019 season, failed to make, keep and preserve accurate payroll records which contain all of the information required by 29 U.S.C. § 1821(d)(1).

(n)     for the 2019 season, knowingly provide false or misleading information to the named plaintiffs as to the correct hourly rate of pay they were entitled to receive by law.

48

93.     Joinder of all class members for the proposed AWPA Class would be impracticable, if not impossible, for the same reasons alleged in ¶78 above of the Complaint. Upon information and belief, the number of individuals in the proposed AWPA Class for both 2018 and 2019 exceeds 40 people.

94.     The questions of law or fact which are common to the members of the AWPA Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are:

(a)     Is a worker "authorized to work in agricultural employment" a specific agricultural employer within the meaning of 29 U.S.C. § 1802(8)(B)(ii) when the labor certification application by which that H-2A visa was obtained by a farm labor contractor pursuant to the labor certification process detailed in 20 CFR §§ 655.100 and in particular 655.132(b) did not, as required by 20 C.F.R. § 655.132(b)(1), list that specific agricultural employer?

(b)     Are the plaintiffs described in ¶92 above who were jointly employed by the SBHLP Defendants and the Boseman Farms Defendants "migrant agricultural workers" as defined in 29 U.S.C. § 1802(8)?

(c)     Whether the statutory violations described in ¶¶92(a)-(n) occurred on a class wide basis?

95.     The claims of the named Plaintiffs described in ¶92 are typical of the claims of the AWPA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that one or more of those same named Plaintiffs each has an AWPA claim of the type described in ¶¶92(a)-(n) above that turns on the status of all of those persons as "migrant agricultural workers" under 29

49

U.S.C. § 1802(8) at the time that those same named Plaintiffs and those workers performed the work that is described in ¶20 above of this Complaint.

96. The interests of the named Plaintiffs described in ¶92 above in the AWPA claims they have alleged are in no way antagonistic or adverse to those of other AWPA Class members.

97. The named Plaintiffs described in ¶92 above will fairly and adequately represent the interests of the AWPA Class.

## XII.   <u>FIRST CLAIM FOR RELIEF (FLSA)</u>

98. Paragraphs 8 through 75 and 84 through 90, inclusive, above are realleged and incorporated herein by reference.

99. Defendants Greenleaf Nursery Co., Boseman Farms, Inc., and its two principals, Joel M. Boseman and Jean J. Boseman, and O. J. Smith Farms, Inc. and two of its principals, defendants Peyton G. McDaniel and his spouse, Sandra W. McDaniel (Smith Farms Defendants) did not pay the named plaintiffs and the members of the FLSA collective action that are described in ¶¶84-90 above at the rate required by 29 U.S.C. § 206(a) for the work described in ¶¶58-61 and 63-69 above of this Complaint based upon the *de facto* wage deductions made by those same defendants that are identified in the joint employer combinations described in ¶¶77(a)(1)-(3) above from the wages due the named Plaintiffs and the members of the FLSA collective action as a term and condition of employment when those same defendants and joint employer combinations failed to reimburse the plaintiffs and the members of the collective action described in ¶¶84-90 above as alleged in ¶¶63-64 and ¶¶68-69 above for the *de facto* wage deductions that are described in ¶¶58-61 and 63-69, inclusive, above when those expenditures were primarily for the benefit of those same defendants joint employer combinations.

100.    As a result of these actions of these same named defendants acting as joint employers in the combinations that are described in ¶¶77(a)(1)-(3) above in violation of the rights of those same named plaintiffs and the members of the FLSA collective action that are described in ¶¶84-90 above, those same named plaintiffs and the members of that same FLSA collective action have suffered damages in the form of unpaid wages at the minimum rate required by the FLSA and back wages and liquidated damages may be recovered, jointly and severally, under 29 U.S.C. §§ 206(a) and 216(b) against all of those same defendants with that liability limited to the same joint employer combinations that are described in ¶¶77(a)(1)-(3) above.

## XIII.    SECOND CLAIM FOR RELIEF (NCWHA)

101.    Paragraphs 8 through 83, inclusive, above are realleged and incorporated herein by reference.

102.    In both 2018 and 2019, the SBHLP Defendants, defendant Greenleaf, the Smith Farms Defendants, and the Boseman Defendants failed to pay all wages when due at the promised wages AEWR rate pursuant to N.C.Gen.Stat. § 95-25.13(2) and the H-2A job order employment contract provision that mirrors 20 C.F. R. §655.122(l) to the named Plaintiffs and the workers who are members of the NCWHA class and subclasses described in ¶¶77 and 77(a)(1)-(3) on or before their first regular payday for the first workweek in both 2018 and 2019 and on or before the last regular payday for their last workweek that the named Plaintiffs and the workers who are members of the NCWHA class and subclasses described in ¶¶77 and 77(a)(1)-(3) above of this Complaint who were employed or jointly and severally employed by the SBHLP Defendants and one of the joint employers specified in ¶¶77(a)(1)-(3) to perform agricultural employment for one or more of those same three joint employer combinations.

103.     In both 2018 and 2019, when the amount of the *de facto* wage deduction that is described in ¶¶58-61 and 63-69 is considered and applied to the gross amount of wages that the SBHLP Defendants and each of the fixed site agricultural employer defendants identified in ¶¶77(a)(1)-(3) above were obligated to pay and did pay in combination to the named Plaintiffs and the members of the NCWHA class and subclasses who were jointly employed by the SBHLP Defendants with one of the fixed site agricultural employers identified in in ¶¶77 and 77(a)(1)-(3) above of this Complaint, the wages paid to the named plaintiffs and each member of the class and subclasses defined in ¶77 and 77(a)(1)-(3) above was always less than the amount due for that first workweek and first regular payday.

104.     In both 2018 and 2019, the SBHLP Defendants and the fixed site agricultural employer defendants identified in ¶¶77(b)(1)-(2) did not pay to the named Plaintiffs and the corresponding members of the NCWHA class and subclasses that are described in ¶¶77 and 77(b)(1)-(2) above of this Complaint promised wages in the form and in the full amount of the wages due on the regular payday of those same named Plaintiffs and those same corresponding members of the NCWHA class and subclasses for hours work that are described in ¶¶50-52 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the H-2A Job Order employment contracts filed by the SBHLP Defendants that mirror the regulatory requirement of 20 C.F.R. § 655.135(e).  Excerpts of those contracts are copied and attached to this Complaint marked as Plaintiff's Exhibit A, Plaintiff's Exhibit B, Plaintiff's Exhibit C, and Plaintiff's Exhibit D.

105.     In both 2018 and 2019, the SBHLP Defendants and the fixed site agricultural employer defendants identified in ¶¶77 and 77(c) of this Complaint promised wages when due in the form and in the full amount of the wage described in ¶53 above of the Complaint on their

regular weekly payday based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. §§ 655.122(l)-(m)(2018) and 655.135(e).

106.    As a result of these actions of the SBHLP Defendants and the fixed site agricultural employer defendants and joint employers that are identified in ¶¶77(a)(1)-(3), ¶¶77(b)(1)-(2), and 77(c) above for those named plaintiffs and corresponding members of the jointly employed classes and subclasses that are identified in those same paragraphs that were in violation of the rights of those jointly employed Plaintiffs and workers under N.C.G.S. §§95-25.6, the Plaintiffs and those same members of the NCWHA Class and subclasses that are identified have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from the SBHLP Defendants, the Smith Farms Defendants, defendant Greenleaf, and the Boseman Defendants, jointly and severally, to the extent that they are identified in ¶¶77(a)(1)-(3), 77(b)(1)-(2), and 77(c) above under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## XIV.   THIRD CLAIM FOR RELIEF (AWPA)

107.    Paragraphs 8 through 75 and ¶¶ 91-97, inclusive, above are realleged and incorporated herein by reference.

108.    In the Third Claim for Relief based on the AWPA, all named plaintiffs with the exception of plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez for 2018 and plaintiff Tiburcio Antonio Manuel for both in 2018 and 2019 allege the following intentional AWPA violations on behalf of themselves and the class and subclasses defined in ¶¶92 and 92(a)-(n) above of this Complaint against the SBHLP Defendants and the Boseman Farms Defendants, jointly and severally:

(a)     For the 2018 season, used or caused to be used a driver who did not have a valid and appropriate license as provided by North Carolina law to operate the vehicle that Olvin, Pablo and Jeremias drove to transport the named plaintiffs to/from the fields or nursery where they worked in violation of 29 U.S.C. § 1841(b)(1)(B).

(b)     For the 2018 season, failed to pay wages when due in the manner alleged in ¶77(a)(2) above in violation of 29 U.S.C. § 1822(a) and in violation of the working arrangements that are contained in the Clearance Order Job Contract that are copied in Plaintiff's Exhibit A, B, C, and D attached and 29 U.S.C. § 1822(c).

(c)     For the 2018 season, failed to pay wages when due in the manner alleged in ¶77(b)(1) above in violation of 29 U.S.C. § 1822(a).

(d)     for the 2018 season, failed to pay wages when due in the manner alleged in ¶77(c) above in violation of 29 U.S.C. § 1822(a).

(e)     for the 2018 season, failed to provide the plaintiffs with wage statements containing all of the information required by 29 U.S.C. § 1821(d)(2).

(f)     for the 2018 season, failed to make, keep and preserve accurate payroll records which contain all of the information required by 29 U.S.C. § 1821(d)(1).

(g)     for the 2018 season, knowingly provide false or misleading information to the named plaintiffs as to the correct hourly rate of pay they were entitled to receive by law.

(h)     for the 2019 season, used or caused to be used a driver who had a valid and appropriate license as provided by North Carolina law to operate the vehicle that Olvin, Pablo and Jeremias drove to transport the named plaintiffs to/from the fields or nursery where they worked in violation of 29 U.S.C. § 1841(b)(1)(B).

54

(i) for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(a)(2) above in violation of 29 U.S.C. § 1822(a) and in violation of the working arrangements that are contained in the Clearance Order Job Contract that are copied in Plaintiff's Exhibit A, B, C, and D attach.

(j) for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(b)(1) above in violation of 29 U.S.C. § 1822(a).

(k) for the 2019 season, failed to pay wages when due in the manner alleged in ¶77(c) above in violation of 29 U.S.C. § 1822(a).

(l) for the 2019 season, failed to provide the plaintiffs with wage statements containing all of the information required by 29 U.S.C. § 1821(d)(2).

(m) for the 2019 season, failed to make, keep and preserve accurate payroll records which contain all of the information required by 29 U.S.C. § 1821(d)(1).

(n) for the 2019 season, knowingly provide false or misleading information to the named plaintiffs as to the correct hourly rate of pay they were entitled to receive by law.

109. Pursuant to Rule 23(b)(3), that class and those subclasses consist of all migrant and seasonal agricultural workers (as the terms "migrant agricultural worker" is defined in 29 U.S.C. §§ 1802(8) and 29 C.F.R. § 500.20(p)) who performed temporary or seasonal work in agriculture when they were jointly employed in North Carolina by one or more of the SBHLP Defendants and one or more of the Boseman Defendants at any time in 2018 and/or 2019. Except as otherwise alleged, this class consists of the subclasses that are described and identified in ¶¶92(a)-(n) of this Complaint and, unless otherwise specified, for each separate agricultural season that occurred in 2018 and 2019.

55

110.     Acting through their counsel of record and before resort to litigation, the named

plaintiffs and the class of workers that they seek represent under the AWPA that are described in

this Claim for Relief made an attempt to resolve the issues in dispute that are presented by this Third

Claim for Relief under the AWPA by presenting a demand letter to Salvador Barajas d/b/a SBHLP,

LLC on October 11,2019 and discussing at intermittent intervals for some months thereafter before

this Complaint was filed in court.  Those attempts involve someone and actually engaging in some

verbal discussion with that counsel about that attempt.  That discussion was still ongoing as of the

date and time this Complaint was filed to preserve the rights of the named plaintiffs and the workers

they seek to represent under the statute of limitations applicable to their FLSA and NCWHA claims.

111.     As a result of the intentional actions or omissions of all defendants that are described

or referred to in this Complaint, all named plaintiffs and each person who is a member of the class

and subclasses defined in ¶92 and ¶¶92(a)-(n) above of this complaint have suffered damages, and

are entitled to payment of a separate award of statutory damages in the full amount authorized by 29

U.S.C. § 1854(c) pursuant to 29 U.S.C. § 1854(c)(1)-(2) for each of the 2018 and 2019 agricultural

seasons in North Carolina.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiffs respectfully request that the Court:

(a)     Grant a jury trial on all issues so triable;

(b)     Pursuant to 29 U.S.C. § 216(b), certify all named plaintiffs as representatives of the

FLSA collective action alleged in ¶¶84-90 above with respect to the First Claim for Relief of this

Complaint;

56

(c)     Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify all named Plaintiffs as representatives of the NCWHA class alleged in ¶¶76 through 83 above with respect to the Second Claim for Relief of this Complaint;

(d)     Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify all named Plaintiffs except plaintiffs Victorino Felix Antonio and Humberto Antonio Hernandez for 2018 and Tiburcio Antonio Manuel for both 2018 and 2019 as representatives of the AWPA class alleged in ¶¶91 through 97 above with respect to the Third Claim for Relief of this Complaint;

(e)     Enter judgment against defendants SBHLP, Inc., Salvador Barajas, Greenleaf Nursery Co., Boseman Farms, Inc., Jean J. Boseman, Joel M. Boseman, O. J. Smith Farms, Inc., Peyton G. McDaniel, and Sandra W. McDaniel, jointly and severally, and in favor of all such named Plaintiffs, and each member of the FLSA Collective Action defined in ¶¶84 through 90 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the First Claim for Relief;

(f)     Enter judgment against defendants SBHLP, Inc., Greenleaf Nursery Co., Salvador Barajas, Boseman Farms, Inc., Jean J. Boseman, Joel M. Boseman, O. J. Smith Farms, Inc., Peyton G. McDaniel, and Sandra W. McDaniel, jointly and severally and to the extent that each such defendant jointly or severally employed one or more named Plaintiff and any member of the NCWHA Class and subclasses defined in ¶¶77(a)(1)-(3), 77(b)(1)-(2) and 77(c), and in favor of all such named Plaintiffs and each such member of the NCWHA Class Action defined in ¶¶76 through 83 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the Second Claim for Relief;

(g)     Enter judgment against defendants SBHLP, Inc., Salvador Barajas, Boseman Farms, Inc., Jean J. Boseman, and Joel M. Boseman, jointly and severally, and in favor of named

Plaintiffs, and each member of the AWPA Class Action defined in ¶¶92 and 92(a)-92(n) above for statutory damages to each of the named plaintiffs and each such class member under 29 U.S.C. § 1854(c)(1) equal to $500 for each of the AWPA statutory violations that are described in ¶¶92(a)-(n) above of this Complaint, plus pre- and post-judgment interest at the full amount allowed by law under the Third Claim for Relief;

(h)    Enter judgment for attorney's fees and costs against defendants SBHLP, Inc., Greenleaf Nursery Co., Salvador Barajas, Boseman Farms, Inc., Jean J. Boseman, Joel M. Boseman, O. J. Smith Farms, Inc., Peyton G. McDaniel, and Sandra W. McDaniel, jointly and severally, and in favor of named Plaintiffs, and each member of the FLSA collective action defined in ¶¶84 through 90 above and each member of the NCWHA class defined in ¶¶76 through 83 above pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(i)    Award such other relief as may be just and proper in this action.


Respectfully submitted, this the 9th day of March, 2020.

LAW OFFICE OF ROBERT J. WILLIS, P.A.
BY:  /s/Robert J. Willis
  Robert J. Willis, Esq.
Attorney at Law
NC Bar #10730
(mailing address)
P.O. Box 1828
Pittsboro, NC  27312
(919) 821-9031 telephone
(919) 821-1764 facsimile
Counsel for Plaintiffs
rwillis@rjwillis-law.com

58